IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| William R. Bates, Jr., | ) | Civil Action No. 8:09-3355-MBS-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, William R. Bates, Jr., brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act.[2]

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 49 years old on the alleged onset date of disability, January 24, 2005. (R. at 121.)  He is a high school graduate (R. at 138) and has past relevant work as conveyor/boiler operator and heavy equipment operator (R. at 62).  The plaintiff alleges he became disabled due to a pituitary tumor, hearing problems, a sleep disorder, headaches and seizures (R. at 134), as well as "wasting of body fat," fatigue, and depression (R. at 162).

---

[1]  A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2]  The plaintiff had filed a previous application for DIB in January 2002, alleging disability as of May 2, 2001, based on these same complaints. After his application was denied administratively, he appealed to the district court, which affirmed the administrative decision denying benefits.  *See Bates v. Barnhart*, Civil Action No. 8:05-2977-MBS-BHH (D.S.C. Oct. 11, 2006).

The plaintiff applied for disability insurance benefits (DIB) on November 5, 2005. (R. at 121-23.) His application was denied in an initial determination and upon reconsideration. (R. at 89, 90-91.) A hearing was held on May 27, 2008. (R. at 36-73.) On June 27, 2008, in an unfavorable decision, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. at 18-31.) The Appeals Council denied the plaintiff's request for review (R. at 1-6), and the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act on September 30, 2007.
>
> (2)    The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of January 24, 2005, through his date last insured of September 30, 2007 (20 CFR 404.1520(b), and 404.1571 *et seq.*).
>
> (3)    Through the date last insured, the claimant has the following severe impairments: hearing loss, history of seizure disorder, depression, status post excision of pituitary tumor, and side effects of medications (20 CFR 404.1520(c)).
>
> (4)    Through the date last insured, the claimant does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> (5)    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform work with restrictions that required simple, routine tasks; a supervised environment; no required interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 50 pounds occasionally and 25 pounds frequently; no more than a low level of hearing acuity; and avoidance of hazards such as unprotected heights and dangerous machinery.
>
> (6)    Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

2

(7)    The claimant was born on July 30, 1955, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  He was 52 years of age, which is defined as an individual closely approaching advanced age 50-54, on the date last insured (20 CFR 404.1563).

(8)    The claimant has a high school education and is able to communicate in English.

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)  Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

(11)    The claimant was not under a disability as defined in the Social Security Act, at any time from January 25, 2005, through September 30, 2007, the date he was last insured for benefits (20 CFR 404.1520(g).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential

questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

As an initial matter, the plaintiff has substantially exceeded the page allotments for his two briefs, without leave to do so.  *See* Local Rule 7.05(B) DSC.  Those limits exist for a reason, to the benefit of the parties and the Court.  That being said, the plaintiff's *pro se* briefs are two of the best the Court has seen, of any authorship, and has been thoroughly considered.  His points are numerous, some material and others less so.  As a result, the Court has been somewhat discriminating in its treatment, limiting its discussion to the actual objections alleged and argued.  Various collateral issues have been considered but do not persuade the Court differently as to outcome and are not all dealt with expressly.

In that respect, the plaintiff principally contends that a remand or award of benefits is in order because he was ineffectively assisted by counsel at the administrative level and because the ALJ erred (1) in failing to find him credible; (3) in failing to give the opinion of his treating physicians controlling weight; and (4) in failing to find certain impairments severe.  The Court will address each alleged error in turn.

5

## I.    Ineffective Assistance of Counsel

The plaintiff first contends that he did not receive a fair hearing due to ineffective assistance of counsel. Specifically, the plaintiff emphasizes that his attorney advised the ALJ on the record that "the case should not be granted" and further indicated to the ALJ that he was "not going to appeal." (R. at 52.)  Counsel also stated that he would feel better "not asking any questions" of plaintiff himself.  (R. at 48.)  Plaintiff's attorney expressed these sentiments apparently because he was surprised by the plaintiff's admission that he used a backhoe for jobs in the neighborhood on occasion and still owned a dump truck. (R. at 52.)  The plaintiff contends that his attorney, in these remarks, prejudiced his case against him before the ALJ.

As far as the Court can tell and has been informed, however, recovery for such alleged incidents of allegedly ineffective counsel are not actionable on appeal of a denial of benefits.  The "Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings." *Cornett v. Astrue*, 261 Fed. Appx. 644, 651 (5th Cir.2008) (rejecting ineffective assistance of counsel claim where plaintiff was denied SSI and citing *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir.1992)); *see also Russell v. Chater*, 62 F.3d 1421, at *2 (8th Cir.1995) (ineffective assistance of counsel claim not cognizable in a Social Security appeal); *Slavin v. Commissioner*, 932 F.2d 598, 601 (7th Cir.1991) ("[t]here is no principle of effective assistance of counsel in civil cases."). At least one court specifically has held that a Social Security claimant who is represented by counsel of the claimant's own choosing may not later claim that counsel was ineffective. *See Hettinger v. Richardson*, 365 F.Supp. 1245, 1246 (E.D. Pa.1973); *see also Cole v. Commissioner of Social Sec.*, 2010 WL 3782445, at *5 (N.D. Miss. September 20, 2010). "Given the nonadversarial nature of the administrative process, competent legal representation of the claimant during the process is not a prerequisite to issuance of a valid administrative decision." *Banta v. Chater*, 1995 WL 864573, *2 (W.D. Okl.1995).

While not as blatantly undermining as the testimony here, the behavior of counsel in *Cole* also allegedly suggested that counsel had not adequately prepared and "must not have understood the nature of the proof necessary to obtain benefits." *Cole*, 2010 WL 3782445, at *5.     By all these precedents, the Court feels constrained to find that no grounds for remand lies in the allegation of ineffective assistance of counsel.  That is not to say that the plaintiff's frustration over the exchange is not justified; it is simply not redressable.

## II.     Plaintiff's Credibility

The plaintiff next contends that the ALJ failed to properly evaluate his subjective symptoms.  Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations.  *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996).  Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted).  This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594.  Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595.  When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593.  Said differently, once an ALJ concludes that an impairment could reasonably be expected to

produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff has not contested the ALJ's adherence to the *Craig* framework. Rather, he challenges some of the conclusions drawn, in its application. Most notably, the plaintiff argues that the AlJ ignored certain essential evidence and mischaracterized others.

The ALJ found that the plaintiff's impairments were capable of producing some pain and limitation, at step one, but not to the degree alleged, at step two. (R. at 28.) The ALJ found the plaintiff's activities and abilities were inconsistent with disabling symptoms. *Id*. The ALJ noted the plaintiff's wide range of daily activities. (R. at 25-26.) This was an appropriate consideration. *See Craig v. Chater*, 76 F.3d 585, 591-596 (4th Cir. 1996) (noting the factors to be considered in the credibility evaluation process, including evaluation of Plaintiff's activities); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider daily activities when evaluating subjective complaints of disabling pain or other symptoms); 20 C.F.R. § 404.1529(c)(3)(I) (daily activities are evidence which will be considered in credibility evaluation). The ALJ emphasized that the plaintiff was able to drive; work in the yard; perform household chores; socialize; shop; cook; maintain his personal hygiene; "mess around" with his antique cars; go to restaurants; watch television; attend church; help care for his elderly mother; and read the newspaper. (R. at 21, 80, 152-155.) The ALJ also observed that the plaintiff was engaging in some work related activities, including some occasional backhoe work in the neighborhood. (R. at 26.)

The ALJ also discussed at length why the plaintiff's claims of muscle wasting, "drying up," and growth hormone deficiency were not credible due to a lack of objective medical evidence. (R. at 24-25.) This finding also has support in the record, including examinations and testing which were completely normal. (See, e.g., Tr. 282, 284, 288, 290, 299, 300, 302, 305-306, 358, 360, 361, 363, 376, 406, 407, 409, 410, 411). The ALJ noted that the plaintiff's weight had consistently fluctuated, through the years, at around 200 pounds and

that he was at 225 pounds the day of the hearing.  The ALJ stated that clinical findings consistently showed normal strength with no measurable muscle loss or atrophy.  (R. at 24.) The ALJ thoroughly recounted numerous incidents of normal testing.  *Id*.

The plaintiff principally complains that the testimony of his mother, as to the true nature of the plaintiff's daily activities, was neither solicited nor taken into account.  The plaintiff argues that her testimony would support the conclusion that the plaintiff is not able to live independently (R. at 434); that she moved in with the plaintiff many years ago after his divorce in order to take care of him (R. at 299,470); that she maintains a safe home environment for the plaintiff (R. at 434); and that her efforts keep the plaintiff safe during the days when the plaintiff is experiencing his "flurries" of seizures. (R. at 406-407.)

The participation of the plaintiff's mother in his life, however, was not lost on the ALJ. (See R. at 26.)  To be extraordinarily clear, she was a witness at his hearing and testified as to her involvement in his daily activities.  (R. at 53-64.)  Any implication by the plaintiff to the contrary is misleading.  In his decision, the ALJ expressly noted that she prepared the plaintiff's medications list and accompanied him in the backhoe to ensure his safety in the event of a seizure.  *Id*.  Moreover, the ALJ expressly addressed much of the evidence relied upon by the plaintiff, cited in the proceeding paragraph, including the opinions of Dr. Lyle concerning assistance of the plaintiff's mother.  *Id*. at 29.  The ALJ heard the accounts of both the plaintiff and his mother and was in the best position to adjudge whether or not her testimony qualified his as to his daily activities.  It was certainly appropriate, in the balance of the witnesses, for the ALJ to choose the plaintiff's own testimony as to daily activities, which, as discussed, did not speak of the level of impairment he otherwise alleged and to not view the mother's participation as indicating disabling dependency. It should be noted that the ALJ's residual functional capacity assessment expressly contemplates an accommodation for the kind of assistance provided by the mother in the limitation to a supervised environment without any interaction.  (R. at 21.)  The mother's account was not ignored or left incomplete.

9

The plaintiff also challenges the defendant's contention that the record supported a conclusion that the objective evidence did not support claims of muscle wasting, "drying up" and growth hormone deficiency.  The plaintiff does proffer some evidence to that end.  His family physician, David Lyle, M.D., on April 17, 2006, stated, "He does produce lab work, which shows a growth hormone deficiency with loss of muscle fat around his upper extremities and more deposit about the abdomen . . . Mr. Bates complains of fatigue."  (R. at 363.)  Of course, the date of that lab work is not identified.  *See id.*  The plaintiff also quotes a laboratory report, dated December 17, 2003, over a year prior to the alleged onset of disability, January 24, 2005 (R. at 121),  which indicates, "Because of diurnal variability random growth hormone values are not reliable for diagnosis of growth hormone deficiency . . ."  (R. at 346.)  As far as the Court can tell this is evidence, at best of no diagnosis concerning hormone deficiency one way or the other.  Instead, the report only tends to corroborate the ALJ's conclusion that objective testing failed to confirm the condition.

The plaintiff argues that such evidence "supports Plaintiffs assertions that he believes himself to suffer from growth hormone deficiency."  He submits that there is an abundance of evidence in the medical record of "his beliefs that he has been 'drying up'" (R. at 289, 291, 294, 298, 304-305, 376, 407, 487, 493-494,497,500), that he has lost fat in his extremities (R. at 340, 376, 393), that he has experienced a decrease in body mass and a change in body composition (Tr. 271, 304, 378,393,457-458,484,496,500).  His beliefs are, all at the same time, the whole point and no point at all.  That the plaintiff *believes* he has been wasting and has hormone deficiency is not in dispute; the ALJ was tasked with measuring the accuracy or rather the credibility of that subjective belief.  He found little objective evidence in support.  To rejoin that conclusion of the ALJ, simply by reemphasizing the predicate belief held, is circular.

Other evidence of the plaintiff is outside the relevant period, prior to the onset of his disability.  (See Pl. Resp. at 23-24; R. at 285, 289, 300.)  And, still other evidence of the

plaintiff simply does not speak to any actual evidence of wasting or a growth hormone deficiency.  (R. at 300, 407 (describing plaintiff as "still obsessed with wasting).)

Finally, the plaintiff complains that the Judge mischaracterized his testimony, stating inaccurately that the plaintiff "initially testified that he did not use [a] backhoe but then testified that he did use it occasionally." (R. at 26.) The plaintiff contends that he had consistently represented some occasional use and, therefore, the ALJ would be wrong for discounting his testimony over a changed story.  But, the Court does not read the ALJ's reasoning in that way.  The ALJ never says that the plaintiff's account is dubious because he lied or otherwise flip-flopped concerning use of the backhoe. (See R. at 26.)  Rather, the ALJ simply concluded that the plaintiff was capable of doing more work than alleged because of his occasional use of it, regardless of when such use was confessed.  In other words, the ALJ was not influenced by any alleged change in the account but rather by the substance of the account itself.  *Id*.

For all these reasons, the ALJ's determination was based on substantial evidence and should not be disturbed.  The fact that the plaintiff might be able to point to evidence upon which a different conclusion might be reached is of no particular moment.  *See Blalock*, 483 F.2d at 775.

## III.    Treating Physician

The plaintiff next contends that the ALJ failed in his consideration of five treating physicians, including two neurologists, a general practitioner, an endocrinologist, and a psychiatrist.  The plaintiff contends that all five agree that he is disabled.  As an initial matter, the opinions of Mary L. Kemick, M.D. (R. at 564), James Selph, M.D. (R. at 571), and William Bragdon, M.D. (R. at 573), were all issued either years after the plaintiff's alleged onset of disability or years after the expiration of his insured status in September 2007.  It was permissible to consider them non-controlling.  *See, e.g, Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 693, 698 (11th Cir.2006) (noting it appropriate to give less weight to treating physician where he only saw plaintiff twice after onset date); *Holmes*

11

*v. Astrue*, 2010 WL 2196600, at *15 n.15 (N.D. Ga. May 27, 2010); *Payne v. Comm'r of Soc. Sec. Admin.*, 1998 WL 808616, at *5 (E.D. Pa. Nov.23, 1998) (noting that opinion might properly be disregarded where it was made two years prior to the onset date). Reports issued after the last insured status date do not purport to comment on disability during the relevant period.  (R. at 573.)  In his lengthy response, the plaintiff has not rejoined these points and has instead elected to emphasize the opinions of Drs. David Lyle and Theodore Faber.  The Court, therefore, considers the matter limited to those opinions.

As always, the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p.  A treating physician's opinion may be assigned little or no weight if it is conclusory.  *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996).

Concerning Dr. Lyle's opinion, he found that although the plaintiff was "physically able to do manual labor," the doctor could not "imagine how he will continue to be able to function independently, and therefore [ ] he qualifies for disability." (R. at 434.) The ALJ rejected this opinion because it summarily speculated that the plaintiff could not function independently.  The opinion does not explain the basis for this conclusion but it is reasonably implied that it was made upon the plaintiff's representations and not any personal knowledge of the ALJ or clinical assessment.  Dr. Lyle stated that the plaintiff's mother creates a functional environment for him at home.  If it is otherwise – that he was

not relying upon the representations of the plaintiff, Dr. Lyle did not explain it, which itself would be a justification for reducing the opinion's value.  But, the Court has already concluded that the ALJ had substantial evidence to reject as fully credible the plaintiff's representations about activities of daily living.  As stated, there is substantial evidence from which to conclude that they are varied and sufficiently independent in kind.  (R. at 44, 80, 152-155, 251, 432, 559.)  So to the extent those subjective representations were the only basis for Dr. Lyle's opinion, it was permissible for the ALJ to reject it as controlling.  The ALJ also emphasized, in support, that a Dr. Robespierre Del Rio noted no significant functional problems and no evidence of impaired social functioning (R. at 25, 251).  Dr. Del Rio additionally concluded that the plaintiff could complete tasks, and receive and integrate new information (R. at 25, 251-252). *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (ALJ may properly give significant weight to an assessment from a non-treating physician).

Theodore Faber, M.D., who treated Plaintiff for his seizure disorder, opined in December 2005 that the plaintiff

> has been under my care for many years with a history of seizure disorder. He also appears to suffer from some form of "wasting disorder" as he puts it which has yet to be explained despite numerous investigations by his physicians. He appears to be slowly worsening. His fatigue level is very great. He reports that he is quite frustrated and may be developing some depression as a result of his condition. I do not believe that he will be able to competitively perform in the labor market.

(R. at 268.)

The ALJ gave Dr. Faber's conclusion little weight, noting there was no objective evidence that the plaintiff suffered from a "wasting disorder" and that Dr. Faber's rather equivocal diagnosis of depression was not supported by the record, which showed the plaintiff's mental limitations were not significant.  (R. at 29.)  As discussed, the ALJ identified various examinations and testing which were completely normal and stated that clinical findings consistently showed normal strength with no measurable muscle loss or atrophy.  (R. at 24; see, e.g., R. at 282, 284, 288, 290, 299, 300, 302, 305-306, 358, 360,

361, 363, 376, 406, 407, 409, 410, 411.) This evidence is substantial and in contradiction to the opinion, such that was permissible to give it less than controlling weight.

The plaintiff attempts to speculate as to the basis of Dr. Faber's opinion, generally, (Pl. Brief at 40) but those bases are not expressed in Dr. Faber's own opinion. The plaintiff also appeals to abnormal clinical and laboratory findings, including MRI's (R. at 517, 523), laboratory tests showing Dilantin medications at normal therapeutic levels (R. 412-417,470-471), and an abnormal EEG test (R. at 275). Respectfully, this evidence has not been expertly interpreted for the Court. Much of it is raw data, which does not speak in any particular way on its own. Moreover, the Court has not been shown how it relates to the "wasting" allegations. Ultimately, however, it is of little consequence. The Court has already traced other substantial evidence of record, identified by the ALJ (R. at 24), which contradicts any recommendation of Dr. Faber as to wasting. While the plaintiff may have produced competing evidence, he has not produced evidence that makes that which the ALJ relied upon to reject Dr. Faber's opinion not credible or effective. *See Blalock*, 483 F.2d at 775. Such is the nature of the standard of review. The Court may not simply reweigh the relative corpuses of evidence; rather, the undersigned simply measures whether the corpus chosen by the ALJ is sufficient. Here it is. Even the plaintiff has conceded that "physicians have been unable as yet to successfully diagnos[e] and treat his [wasting ] condition" and that some have discounted his complaints. To the extent the ALJ has found that evidence persuasive, he was justified. In his thoroughness, the plaintiff has raised numerous collateral issues, which do not change the view of the Court, but have been considered in detail by the same, although ultimately rejected.

## IV.    Severe Impairments

Lastly, the plaintiff contends that the ALJ erred by not finding his knee and shoulder impairments to be "severe." To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment

14

is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is the plaintiff's burden to show he has a severe impairment); 20 C.F.R § 404.1520(c).    Social Security Ruling 96-3p states that the Commissioner will consider a claimant's impairment "severe" if it significantly limits his physical or mental abilities to perform basic work activities.  SSR 96-3p.

The plaintiff's burden to show a severe impairment is not an exacting one, however. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); Albright v. Commissioner of Social Sec. Admin., 174 F.3d 473, 474 n.1 (4th Cir. 1999).  In short, the "inquiry is a de minimis screening device to dispose of groundless claims." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3rd Cir. 2004).

Fatally, it appears that the plaintiff never claimed either impairment as a basis for his claims of disability and, therefore, is estopped, now, from challenging some failure of the ALJ to consider them as such. *See, e.g., Street v. Barnhart*, 133 Fed. App'x 621, 627 (11th Cir. 2005) (ALJ under no obligation to investigate a claim not presented in the application and not offered at the hearing as a basis for disability).  Furthermore, this was not a case where the claimant was unrepresented, subjecting the ALJ to a heightened duty to probe into all of the relevant facts surrounding Street's disability claim. *See, e.g., Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir.1995) (holding that, where the right to counsel has not been waived, if claimant is not represented, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts").

15

Even still, the plaintiff has not shown any associated functional limitations. He has produced evidence of his "persistent complaints." (See R. at 446-448, 519-520, 532-537, 444-445, 538-541.) But complaints are not enough; there must be some effect on his ability to perform work. See SSR 85-28. For all these reasons, the ALJ's severity analysis was not incomplete or otherwise flawed.[3]

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED

> s/Bruce Howe Hendricks
> United States Magistrate Judge

January 21, 2011
Greenville, South Carolina

---

[3] The plaintiff has also made some complaints about the ALJ's consideration of his depression. The ALJ reviewed the relevant evidence thoroughly. (R. at 25.) He found it severe. (R. at 21.) But, he substantially explained his reasoning for concluding that the depression produced no more than mild restrictions of daily living and has not required significant treatment. See *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms). The plaintiff's objections to the ALJ's rationale are not persuasive.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).